CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JAN 22 2015

JULIA C. DUDLEY, CLERK
BY: _____
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

MALCOLM MUHAMMAD,　　　　　　)　　　Civil Action No. 7:14-cv-00134
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　　**MEMORANDUM OPINION**
　　　　　　　　　　　　　　　　　)
RANDALL C. MATHENA, et al.,　　　)　　　By:　　Hon. Jackson L. Kiser
　　　　Defendants.　　　　　　　　)　　　　　　Senior United States District Judge

Malcolm Muhammad, a Virginia inmate proceeding pro se, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. Plaintiff generally alleges that defendants, who are staff of the Virginia Department of Corrections ("VDOC") and the Red Onion State Prison ("ROSP"), do not serve him nutritional food in conformity with his Islamic beliefs. Defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition.[1] After reviewing the record, I grant defendants' motion for summary judgment because Plaintiff failed to exhaust available administrative remedies and fails to establish a defendant's violation of clearly established federal law.

## I.

Plaintiff filed this action because he believes trays of the VDOC's Common Fare Menu ("Common Fare")[2] are not prepared and served at ROSP in conformity with the religious requirements of the Nation of Islam ("NOI"), which is Plaintiff's religion. Plaintiff complains

---

[1] The court did not authorize Plaintiff to file a response to defendants' Answer. See Fed. R. Civ. P. 12(a)(1)(C).

[2] Common Fare was developed to meet the dietary needs of inmates who need a Kosher, Halal, or non-pork diet for religious reasons and cannot be accommodated by foods on other VDOC menus. In order to receive Common Fare, the inmate must apply to prison and VDOC officials and demonstrate a sincere religious need for Common Fare. If approved, the inmate must sign the Common Fare Agreement, promising to abide by the rules of participation. Violations of the Common Fare Agreement include failing to pick up at least 75% of the Common Fare meals served each month, eating, trading, or possessing unauthorized food items, giving away or trading a Common Fare food item, purchasing or eating food items inconsistent with Common Fare, and not attending available religious services at least twice per month. An inmate who violates the Agreement is removed from Common Fare for six months for a first offense, a year for a second offense, and four years for a subsequent offense. These sanctions are intended to deter the participation of inmates who lack a serious religious interest in the Common Fare program.

about the lack of hot water for morning cereals, the substitution of fruit juice for servings of fruit, the smaller portion sizes of Common Fare meals than of other menus, the quality of Common Fare vegetables and bread, the lack of religious certification for beverages and bread, and the manner trays, cups, and lids used for Common Fare are transported, cleaned, and stored in relation to the "unsanitary" foods served on other menus. Plaintiff also believes that prison workers are not qualified to serve Common Fare, that the administrative procedures implemented to be approved for, to receive, and to be removed from Common Fare are unlawful, and that inmates should not be forced to carry and present their identification cards to receive Common Fare. Plaintiff argues that these issues violate his rights pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First, Eighth, and Fourteenth Amendments. Plaintiff requests damages and declaratory and equitable relief.

Defendants explain that fresh produce is ordered every week and washed and cleaned, produce that is not suitable for serving because of, for example, age or mold is discarded, bread that is stale, moldy, or "old" is not served, and Common Fare meals include Kosher bread. Defendants further explain that fresh fruit is served when available, but 100% fruit juice is served as an appropriate replacement when no fresh fruit is available. Defendants assert that only authorized food items are served on the Common Fare menu and that all authorized food items comply with Kosher and Halal standards.

II.

Defendants argue that Plaintiff failed to exhaust available administrative remedies for almost all the claims, as required by 42 U.S.C. § 1997e(a). Defendants acknowledge that Plaintiff did exhaust two regular grievances about being allegedly served spoiled vegetables,

2

non-Kosher white bread, and peanut butter with apple butter. Plaintiff acknowledges that he has never filed any grievances alleging that he receives inadequate portion sizes, particularly when compared to the food made available to the general population; that food preparation, transportation, and service at ROSP substantially burden his ability to exercise his religion; and that the requirements to sign a contract before receiving Common Fare and to display an identification card before each meal are unlawful. Consequently, defendants are entitled to summary judgment as to all the unexhausted claims. See, e.g., Porter v. Nussle, 534 U.S. 516, 524, 532 (2002).

## III.

Plaintiff alleges that he has been served rotten, spoiled, or moldy foods, non-Kosher white bread, and peanut butter mixed with apple butter, which allegedly "has subjected Plaintiff to loss of calorie intake[,] vitamins, and place in harms ways [sic] – physically and mentally – to the wit of, weight loss, mental/physical fatigue, psychological problems, mineral intake which is essential for brain function, [and] stress[,]" all in violation of the Eighth Amendment. Plaintiff also alleges that the VDOC's failure serve unspoiled vegetables, Kosher white bread, and peanut butter separate from apple butter violates his Islamic dietary beliefs and, consequently, RLUIPA and the First Amendment. After reviewing the record, I grant defendants' motion for summary judgment because Plaintiff does not describe a defendant's violation of clearly established federal law.[3]

---

[3] Plaintiff does not state facts on which a reasonable factfinder could conclude that defendants Walrath, Shear, Carr, or Taylor had any personal involvement with Plaintiff's allegations. See, e.g., Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (recognizing the failure to show a defendant's personal involvement is fatal to a § 1983 action). Staff's "after-the-fact denial of a grievance [or response to a letter] falls far short of establishing § 1983 liability." DePaola v. Ray, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (Sargent, M.J.). Liability under § 1983 may not be predicated on the theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978); Fisher v. Washington Metro.

3

A.

"It is well-established that inmates must be provided with nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consumer it." <u>Shrader v. White</u>, 761 F.2d 975, 986 (4th Cir. 1985). Allegations of inadequate prison food service may be sufficient to state a claim for relief under § 1983 if the deprivation at issue is serious, but isolated instances of spoiled food or occasional and short-lived problems with food service are insufficient to state a cognizable claim under the Eighth Amendment. <u>See, e.g.</u>, <u>Hamm v. DeKalb Cnty.</u>, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); <u>Bedell v. Angelone</u>, No. 2:01cv780, 2003 U.S. Dist. LEXIS 27755, at *42, 2003 WL 24054709, at *14 (E.D. Va. Oct. 3, 2003) (holding that being served rotten food is unpleasant and unfortunate but does not state a claim when no serious deprivation occurred). Plaintiff must establish that he suffered an objective, "serious deprivation of a basic human need," <u>Williams v. Griffin</u>, 952 F.2d 820, 824 (4th Cir. 1991), and either a serious physical or emotional injury or exposure to a substantial risk of such harm resulting from the alleged condition, <u>Helling v. McKinney</u>, 509 U.S. 25, 33-34 (1993). Plaintiff must also establish that a defendant was deliberately indifferent to the alleged condition. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

---

<u>Area Transit Author.</u>, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Accordingly, these defendants are also entitled to qualified immunity and summary judgment for these additional reasons. I further note that defendants are immune from damages in their official capacities. <u>See, e.g.</u>, <u>Sossamon v. Texas</u>, __ U.S. __, 131 S. Ct. 1651, 1660 (2011); <u>Rendelman v. Rouse</u>, 569 F.3d 182, 189 (4th Cir. 2009); <u>Gray v. Laws</u>, 51 F.3d 426, 430 (4th Cir. 1995). Moreover, to the extent that Plaintiff might be requesting injunctive relief specific to the policies and practices at ROSP, Plaintiff has been transferred to Keen Mountain Correctional Center, and a request for injunctive relief as it pertains to ROSP is moot. <u>See, e.g.</u>, <u>Incumaa v. Ozmint</u>, 507 F.3d 281, 286-88 (4th Cir. 2007).

4

Plaintiff has not alleged sufficient facts from which it could be established that he suffered a serious deprivation of a basic human need. At most, Plaintiff's allegations in the two exhausted regular grievances establish that on several occasions, he was served inedible food, and he does not allege that he actually consumed any of that food. The injuries Plaintiff allegedly suffered are also not sufficient to state an Eighth Amendment claim. See, e.g., Gardner v. Beale, No. 92-6049, 1993 U.S. App. LEXIS 17433, at *5-8, 1993 WL 264459, at *2 (4th Cir. July 13, 1993) (per curiam) (affirming grant of summary judgment on Eighth Amendment claim that the VDOC meal service provided insufficient caloric intake, where the inmate alleged he was "starving and suffered mental anguish," reasoning that those allegations were insufficient to constitute a claim of cruel and unusual punishment); Galloway v. Aramark, No. 3:12cv326, 2014 U.S. Dist. LEXIS 50642, at *10-13, 2014 WL 1415307, at *4-5 (E.D. Va. Apr. 11, 2014) (holding that allegations of "hunger pains" allegedly arising from improperly prepared food trays was insufficient to state a cause of action under the Eighth Amendment). While the Eighth Amendment protects prisoners from cruel and unusual living conditions, Plaintiff is not entitled to relief because he has been exposed to uncomfortable, restrictive, or inconvenient conditions of confinement. See Henderson v. Virginia, 2007 U.S. Dist. LEXIS 70207, at *26, 2007 WL 2781722, at *7 (W.D. Va. Sept. 21, 2007) (Conrad, J.) (unpublished). Rather, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Accordingly, defendants are entitled to qualified immunity and summary judgment for this claim.

5

B.

RLUIPA and the First Amendment prohibit the government from imposing "a substantial burden" on an inmate's ability to exercise his religion, unless the government can demonstrate an appropriate reason for that burden. See 42 U.S.C. § 2000cc-1(a); Turner v. Safley, 482 U.S. 78, 89 (1987). A substantial burden is "one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (internal quotations omitted).

Plaintiff fails to establish that, due to a defendant's act or omission, his alleged receipt of allegedly non-Kosher white bread, peanut butter served with apple butter, or rotten, spoiled, or moldy foods described in the two exhausted regular grievances put "substantial pressure" on him to modify his behavior and violate his beliefs. See Holt v. Hobbs, __ U.S. __, 2015 WL 232143, at *6, 2015 U.S. LEXIS 626, at *14-15 (Jan. 20, 2015) (recognizing the plaintiff has the burden to show a sincerely held religious belief and that governmental action substantially burdened that belief); see also Lovelace, supra; Talbert v. Jabe, 7:07-cv-00450, 2007 U.S. Dist. LEXIS 82962, at *19, 2007 WL 3339314, at *5-6 (W.D. Va. Nov. 8, 2007) (Conrad, J) (recognizing isolated incidents for food services that allegedly violate an inmate's religious beliefs indicate a lack of intent on the part of defendants and that intentional action must be established); Frazier v. Ferguson, Civil Action No. 04-5140, 2006 U.S. Dist. LEXIS 101513, at *9-10, 2006 WL 2052421, at *4 (W.D. Ark. June 28, 2006) (finding no substantial burden under RLUIPA for an incarcerated Seventh-day Adventist who had to discard some food from vegetarian diet that was

6

at odds with his religious vegan diet). Plaintiff does not allege that he was forced to consume any of the contested foods, and he also fails to show that the contested foods he does not want to eat comprise a substantial portion of the nutrients and calories in the Common Fare food he receives. Furthermore, the negligent preparation or service of Common Fare also does not establish a violation of RLUIPA or the First Amendment.

The uncontroverted record reflects that Common Fare substantially accommodates Plaintiff's religious dietary needs as an adherent of NOI, and "incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs," do not always compel the government to bring forward a compelling justification for its otherwise lawful actions.[4] Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 450 (1988); see Sherbert v. Verner, 374 U. S. 398, 412 (1963) ("For the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government.") (Douglas, J., concurring). Moreover, a claim that prison officials have not followed their own independent policies or procedures does not state a constitutional claim. See, e.g., United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cnty. of Fairfax, 907 F.2d

_____

[4] I also conclude that the record supports a finding that the Common Fare program as currently operated is reasonable and furthers compelling state interests by the least restrictive means. See Lyng, supra. Common Fare regulations reflect that VDOC and ROSP administrators have undertaken substantial effort to design and implement a single, centralized program that is certified by experts in religion and nutrition to accommodate Plaintiff's dietary beliefs and nutritional needs. I find it self-evident that the centralized menu and procedures further legitimate and neutral VDOC interests as a cost-efficient, uniform manner by which to accommodate inmates' various religious dietary beliefs at numerous VDOC facilities. See id. at 452 ("However much we might wish that it were otherwise, government simply could not operate if it were required to satisfy every citizen's religious needs and desires."); see also Coleman v. Jabe, No. 7:11-cv-00518, 2013 U.S. Dist. LEXIS 114551, at *6, *14-15, 2013 WL 4084762, at *2, *5 (W.D. Va. Aug. 13, 2013) (Wilson, J) (recognizing that the every inmate's religious demand to change the Common Fare program cannot be accommodated).

1459, 1469 (4th Cir. 1990). Accordingly, defendants are entitled to qualified immunity and summary judgment for these claims.

## IV.

For the foregoing reasons, defendants' motion for summary judgment is granted.

**ENTER**: This 22nd day of January, 2015.

Senior United States District Judge